**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0250, <u>The Church of the Sword v. Town of Westmoreland</u>, the court on December 14, 2015, issued the following order:**

Having considered the parties' briefs and oral arguments, the court concludes that a formal written opinion is unnecessary in this case.

The plaintiff, The Church of the Sword, appeals an order of the Superior Court (<u>Kissinger</u>, J.) granting the defendant, the Town of Westmoreland (Town), summary judgment. In April 2014, the plaintiff applied for a property tax exemption under RSA 72:23, III (2012), claiming that its real estate in Westmoreland was a parsonage. The Town denied the exemption, the plaintiff appealed to superior court pursuant to RSA 72:34-a (2012), and the Town moved for summary judgment, which the court granted. On appeal, the plaintiff challenges the court's order on a number of procedural, statutory, and State and Federal constitutional grounds. We affirm.

The following facts are derived from the record. The plaintiff is a nonprofit organization incorporated in New Hampshire as a church; it states that its members believe in "life-long learning, self-ownership, . . . independent thought," and Part I, Article X of the New Hampshire Constitution (Right of Revolution). The plaintiff conducts weekly "services," which consist of "[c]onfrontation . . . with swords, [a]nnouncements of members in hospital or otherwise afflicted, [c]ommunion, [r]eadings and [m]onologues, [i]nstrumentals, the [o]ffertory, and pie." The plaintiff's foundational works include <u>The Book of Five Rings</u> by Miyamoto Musashi, <u>The Tao de Ching</u> by Lao Tsu, <u>The Art of War</u> by Sun Tzu, and a work by Max Stirner. To become a "pastor" of the plaintiff, one must, among other things, run a service, organize an "approved event," and win six of ten sword "bouts."

"When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and inferences properly drawn from them, in the light most favorable to the non-moving party." <u>Sabinson v. Trustees of Dartmouth College</u>, 160 N.H. 452, 455 (2010). "If this review does not reveal any genuine issues of material fact, <u>i.e.</u>, facts that would affect the outcome of the litigation, and if the moving party is entitled to judgment as a matter of law, we will affirm." <u>Id</u>.

The plaintiff's principal argument is that the trial court misapplied RSA 72:23, III in granting the Town's motion for summary judgment. The plaintiff

also argues that the trial court impermissibly considered its "doctrines," "primary mission," and "weekly services" individually as secular activities. According to the plaintiff, the court should have found those activities, taken as a whole, to be religious activities. Finally, the plaintiff proposes that we adopt a multifactor test similar to the Internal Revenue Service's (IRS) guidelines for determining "whether an organization is considered a church for federal tax purposes" as the metric for determining whether that organization's real estate is exempt from New Hampshire property taxes. We reject each of these arguments.

RSA 72:23, III exempts many types of religious properties from taxation, including:

> [h]ouses of public worship, parish houses, church parsonages occupied by their pastors, convents, monasteries, buildings and the lands appertaining to them owned, used and occupied directly for religious training or for other religious purposes by any regularly recognized and constituted denomination, creed or sect, organized, incorporated or legally doing business in this state and the personal property used by them for the purposes for which they are established.

RSA 72:23, III. RSA 72:23-m places the burden of proof on the organization that is seeking the tax exemption to show that it meets the exemption's requirements. RSA 72:23-m (2012).

In most of our decisions concerning RSA 72:23, III, there has been no dispute as to the religious nature of the organizations that have claimed the exemption. Rather, the organizations in those cases objected to how the local government apportioned the tax-exempt and nontax-exempt areas of their properties. See Appeal of Liberty Assembly of God, 163 N.H. 622, 624 (2012) (affirming an order of the Board of Tax and Land Appeals that only sixty percent of a religious organization's property was used for religious purposes and was therefore tax-exempt); Appeal of Emissaries of Divine Light, 140 N.H. 552, 554 (1995). In one case, however, we affirmed the outright denial of a religious property tax exemption. See Haas v. Town of Ashland, 122 N.H. 865, 865 (1982) (affirming the denial of an exemption to a "church" whose stated purpose was to "search for the holy grail and other treasures").

Using Haas as a guide, the trial court determined that the plaintiff simply had not met its burden of showing that it qualified for an exemption under RSA 72:23, III. The court stated that, like the plaintiff in Haas, the plaintiff here "does not fall into the grey area of what might be considered a 'church' or 'religious' under the plain and ordinary meaning of" the statute. The court explained that, to qualify for the exemption, "an organization must do more than simply have a set of beliefs about something and apply traditionally

2

religious vocabulary to its practices." We agree, and therefore decline the plaintiff's invitation to establish expanded parameters for the definition of "religion." Contrary to the plaintiff's assertion, the trial court did not engage in impermissible evaluation of the merits of the plaintiff's beliefs and practices. Rather, the court concluded that the plaintiff had failed to show that it had not merely assigned religious nomenclature to its beliefs and practices. Based upon our review of the record and the parties' arguments, we find no error in the trial court's ruling.

The plaintiff cites Emissaries of Divine Light in support of its position that we should overturn the trial court's grant of summary judgment to the Town. In that case, we upheld the constitutionality of RSA 72:23, III because it did not "establish or advance religion, but rather [it] foster[ed] beneficial and stabilizing influences in community life." Emissaries of Divine Light, 140 N.H. at 558 (quotation omitted). Pointing to this language, the plaintiff asserts that any organization, including itself, that "foster[s] beneficial and stabilizing influences in community life [is] religious," and therefore exempt from paying property taxes. In so arguing, the plaintiff misapplies our ruling. Not every organization that has a beneficial influence on the community is necessarily a religious organization that is entitled under the statute to a property tax exemption.

Given our narrow ruling in this case, we need not address the plaintiff's argument that we should adopt a multifactor test similar to the IRS's guidelines as the standard for whether an organization is a religious organization exempt from paying New Hampshire property taxes. We note, however, that we have held that the IRS's interpretation of the tax code is not authoritative with respect to tax exemption for educational institutions under RSA 72:23. See New Canaan Academy v. Town of Canaan, 122 N.H. 134, 138 (1982).

Neither need we address the plaintiff's federal and state constitutional arguments asserting "excessive governmental entanglement" with religion. Because the trial court conducted no impermissible evaluation of the merits of the plaintiff's beliefs and practices, "excessive entanglement" is not implicated.

The plaintiff argues that genuine issues of material fact precluded the trial court from granting the Town's motion for summary judgment. In its brief, the plaintiff asserts that one of these issues is the determination of "whether the Church of the Sword[,] as a new religious organization[,] should be held to the same standard only an established church can satisfy." Another, according to the plaintiff, is the determination of the definition of "church" or "religious" for purposes of statutory tax exemption. Contrary to the plaintiff's assertion, however, these are questions of law, the resolution of which was unnecessary to the trial court's ruling.

Finally, the plaintiff contends that the trial court should not have granted summary judgment prior to the completion of discovery. We disagree. "A party against whom a claim, counterclaim, or crossclaim is asserted . . . may, at any time, move for a summary judgment . . . ." RSA 491:8-a, I (2010). Here, the Town moved for summary judgment after it received the plaintiff's answers to the interrogatories, and the plaintiff objected. In its objection, the plaintiff had the opportunity to explain why additional discovery was necessary, but it failed to do so. Further, as the Town represented at oral argument and the plaintiff did not deny, the plaintiff made no effort to engage in its own discovery prior to the filing of the Town's summary judgment motion, or the trial court's ruling on that motion. Thus, the plaintiff's discovery argument fails.

We have reviewed the plaintiff's remaining arguments and conclude that they warrant no further discussion or are insufficiently developed for our review. See Vogel v. Vogel, 137 N.H. 321, 322 (1993); Sabinson, 160 N.H. at 459 (declining to address arguments that are insufficiently developed for appellate review). Because we find no error in the trial court's conclusion that the plaintiff failed to meet its burden of proving that its property is a tax-exempt parsonage under RSA 72:23, III, we affirm.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**

4